UNITED STATES *v.* R. W. CRAMER & Co., INC. (No. 3722)[1]

United States Court of Customs and Patent Appeals, April 23, 1934

[Reversed February 12, 1934; rehearing granted April 9, 1934; reversed April 23, 1934.]

*Charles D. Lawrence*, Assistant Attorney General (*William Whynman*, special attorney, of counsel) for the United States.

[1] T. D. 47049.

*Rounds, Dillingham, Mead, Neagle & Boyd (Arnold R. Boyd* and *John S. Chapman* of counsel) for appellee.
*John Q. Tilson, amicus curiae.*

[Oral argument April 9, 1934, by Mr. Lawrence, Mr. Chapman, and Mr. Tilson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Two importations of certain electric automatic time switches were made at the port of New York under the Tariff Act of 1930. In Entry No. 717641, the goods were classified by the collector under paragraph 368 (a) (1), (2), and (3) of said act. In Entry No. 702290, the goods were classified as cases for the same, under paragraph 368 (e) of said act.

The importer protested in both cases, claiming a part of the articles in said entries to be dutiable under paragraph 353 of said act, as articles used in controlling and distributing electrical energy, and housings for the same. The United States Customs Court sustained the protests under said paragraph. Thereupon, a rehearing was duly granted. Thereafter, the parties entered into a stipulation of facts and the case was submitted upon said stipulation, which is as follows:

It is hereby stipulated, by and between counsel for the respective parties, subject to the approval of the court, as follows:

(1) That the sample accompanying this stipulation correctly represents the merchandise covered by these protests and may be received in evidence and marked "Exhibit 2";

(2) That Exhibit 2 has the following parts which perform their functions as follows:

(a) 13 jewels and balance and escapement unit;

(b) 1 small A.C.–D.C. electric motor for winding mainsprings of mechanism and for operating control switch;

(c) mechanism or control unit driven by mainspring;

(d) train of wheels and pinions for mainspring shaft to escapement which gives impulses to the balance wheel;

(e) 2 revolving dials. One large dial revolving every 24 hours; one small dial revolving every one hour. The large dial is calibrated 1 to 12 for ante-meridian and 1 to 12 for post-meridian, in ¼-hour divisions for each hour. The small dial is calibrated in minutes 1 to 60 and revolves once each hour;

(f) mechanism or control unit driven by mainspring has mechanism for turning on and off small switch through which a small motor receives electric current. The turning on and off of the current occurs at the time for which the mechanism or control unit is previously set. This small motor both winds the mainspring of mechanism or control unit previously described, and controls the large switch supplying current to lights or other devices to be operated;

(g) an auxiliary switch consisting of two contacts capable of being opened or closed;

(h) switch tripping mechanism for opening and closing auxiliary switch;

(i) electric contact consisting of moving and stationary unit and actuating mechanism;

(j) slate panel to which the contacts and parts are attached;

(k) terminal posts for feed and load wires;

(l) terminal housings or box consisting of pressed steel or cast iron for conduit connections.

(m) main housing of pressed steel or cast iron for covering and enclosing the entire device.

3. The imported device is manufactured and used solely for controlling and distributing electrical energy, and has as an essential feature an electrical element or device and is designed and used for operating automatically many kinds of electrical circuits, such as electric advertising signs, electric signals, electric airway beacons, electric thermostatic devices, etc.

4. The imported device cannot perform the functions for which it is designed without the control unit mechanism.

5. The imported device does not measure electricity or the flowage thereof.

It is further stipulated that this case be submitted for decision upon the record as made in this stipulation.

The trial court, after again considering the case, sustained the claim of the importer, as before. From that judgment, the Government has appealed.

The trial court, speaking through Dallinger, J., in its decision, relied largely upon the legislative history of the provisions in question. The court was of opinion that, in view of the history of said competing paragraphs as shown by the proceedings before the Senate Committee on Finance, and in its report, it was the congressional intent to include within the purview of said paragraph 353 all such time switches and similar devices as those here in question. On the other hand, the Assistant Attorney General contends that the provisions of said paragraph 368 more specifically apply to the merchandise in question, and that if recourse to the legislative history is necessary, such history discloses facts which indicate that the Congress did not intend to include articles like those here imported within paragraph 353.

The relevant portions of the respective paragraphs are as follows:

PAR. 368. (a) Clocks, clock movements, including lever movements, clockwork mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, synchronous and subsynchronous motors of less than one fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachments, and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

(1) If valued at not more than $1.10 each, 55 cents each; valued at more than $1.10 but not more than $2.25 each, $1 each; valued at more than $2.25 but not more than $5 each, $1.50 each; valued at more than $5 but not more than $10 each, $3 each; valued at more than $10 each, $4.50 each;

(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

(3) any of the foregoing containing jewels shall be subject to an additional cumulative duty of 25 cents for each such jewel.

\*     \*     \*     \*     \*     \*     \*

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

Electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

All the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

It will be observed that the stipulation does not show that the imported articles are wholly or in chief value of metal, nor is this otherwise shown by the record. However, this point was not raised by either party on the trial, nor is it raised on this appeal. The case seems to have been argued and decided on the theory that the said articles were wholly or in chief value of metal. This being the situation, the court will examine the case on that theory.

In this court it was stated that the imported articles have 7 jewels instead of 13, as shown by the stipulation hereinbefore quoted.

The parties have stipulated that the imported articles in issue here are "manufactured and used solely for controlling and distributing electrical energy." This brings the articles directly within the scope of the language of the first subdivision of said paragraph 353. Without determining whether the character of the articles in issue justifies such stipulation of the parties, the case will be determined on the stipulation as the parties have made it.

It is, also, not controverted that the imported articles satisfy the language of said paragraph 368 (a):

\* \* \* any mechanism, device, or instrument intended or suitable for \* \* \* performing any operation or function at a predetermined time or times \* \* \*.

It being found, therefore, that the said language of the provision of said paragraph 368 (a) above quoted, and the first division of said paragraph 353 in each instance embraces these articles, we must consider the relative specificity of the two competing provisions. We cannot find that one provision is more specific than the other, as relating to the articles now before us. The language of said portion of paragraph 353 is more specific as regards the material of which it is composed, and in that it deals only with electricity. The said language of paragraph 368 is more specific in the particular function which it performs. An electrical controlling device might include devices to perform a certain function at a certain time, and many other things. On the other hand, a device to perform a certain

function at a certain time might include an electrical controlling or distributing device, and many other controlling or distributing devices which were not electrical. Each is a classification by use.

It follows that, the specificity of the said competing provisions being equal, that paragraph shall apply to the classification of these goods which imposes the higher rate of duty. Paragraph 1559, Tariff Act of 1930.

This conclusion would seem to be determinative of the matter. However, it is insisted by appellee that the legislative history of this act clearly shows that it was the congressional intent that such articles as those here involved should be classified under said paragraph 353. If such intent clearly appears, the goods should be so classified. This is the master rule of statutory construction. See *United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, T.D. 46078, wherein the authorities are reviewed.

The facts presented on the part of the importer and the Government, which are claimed to throw light upon the legislative intent, are as follows:

The bill, H.R. 2667, which afterward became the Tariff Act of 1930, was reported to the House with paragraphs 353 and 368 in substantially the same form as they appear in the act. In the report of the committee on this bill, the following statement was made:

ELECTRICAL MACHINERY AND APPARATUS

The products of this important group of industries are now dutiable under two paragraphs. Transformers, wiring devices, control apparatus, etc., are assessed at 40 percent as manufactures of metal, n.s.p.f. under paragraph 399, whereas generators and motors, which are more expensive and difficult to manufacture and more susceptible to competition, are assessed at only 30 percent as machines, n.s.p.f. under paragraph 372. Furthermore, litigation over the meaning of the term "machine", as applied to electrical equipment, has resulted in transferring some products to the machinery paragraph and leaving similar products classified under paragraph 399. The industry is of such importance that separate classifications of its products are warranted, which is done by this bill. (Rept. no. 7, 71st Cong., 1st sess., p. 43.)

Thereafter, when the bill went before the Senate Committee on Finance, the Committee made certain changes in paragraphs 353 and 368. In paragraph 353 the following language was inserted: "*If any of the foregoing contains a clockwork mechanism the value of such mechanism shall not be included in computing the duty under this paragraph, but such mechanism, and parts therefor, shall be separately assessed under paragraph 368.*" Again, in paragraph 368, the Senate Committee, among other changes, inserted into the paragraph, after the language "at a predetermined time or times", the following: "*and the clockwork mechanisms contained in any electrical device*". The committee also struck out from the paragraph the words "gas, or electric", and inserted "*or gas.*"

In its report, the committee said:

Electrical machinery and apparatus is now dutiable chiefly under several paragraphs, as follows: Paragraph 372 as machinery, paragraph 399 as miscellaneous manufactures of metal, paragraph 368 as meters, and paragraph 339 as household utensils. Litigation over the meaning of the term "machine" as applied to electrical equipment has resulted in transferring some products to the machinery paragraph and leaving similar products classified under paragraph 399. In many cases the more highly manufactured articles have thus been subjected to the lower rates, and in other cases products of similar character have been declared dutiable at different rates. All these products, with the exception of such as are household utensils, lighting fixtures, or laboratory instruments, are now grouped together at a single rate.

The insertion of the words "other than laboratory" after the provision for electrical instruments is to avoid conflict with the provision for laboratory instruments in paragraph 360.

Certain types of electrical meters contain a clock, which drives a drum or disk. Such clockwork mechanisms, usually not made by the electrical firms, are made dutiable separately as clocks under paragraph 368. Simple trains of small gears, used in other types of meters, remain as integral parts of the electric meter, and are meant to be dutiable therewith.

It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

*      *      *      *      *      *      *

*Subparagraph* (a): Phraseology is added specifying the value of synchronous and subsynchronous motors to be dutiable hereunder at not more than $3 each, exclusive of the value of gears or other attachments. The intention is to retain in this paragraph all motors used to drive ordinary electrical clocks, and to transfer to paragraph 353 synchronous motors of less than one-fortieth horsepower, such as are used in time switches and other electrical devices containing some form of clockwork mechanism.

Striking out the words "or electricity" is for the purpose of transferring electricity meters to paragraph 353 for assessment thereunder. The words "and the clockwork mechanism contained in any electrical device" are inserted for the purpose of retaining in this paragraph any clockwork mechanism which may be incorporated in any electrical device. The clockwork mechanisms are intended to be assessed separately hereunder, while the electrical devices minus the value of the clockwork mechanisms are intended to be assessed under paragraph 353. (Rept. no. 37, 71st Cong., 1st sess., pp. 14, 15, and 17.)

These changes were eliminated by the Senate during the consideration of the bill, and when the bill passed the Senate, insofar as the foregoing provisions of paragraphs 353 and 368 are concerned, the bill was in the same form as when passed by the House.

The trial court was of opinion that this legislative history indicates that the Congress thus evidenced its intent to leave all electrical control apparatus machinery and devices, including electrical time switches, within the purview of paragraph 353, except electrical

measuring instruments, such as meters, which were to be left in paragraph 368.

We are unable to discern in this legislative history any such congressional intent. It is evident the Senate Committee on Finance was intending to make certain changes from the plan made by the House, and to include all electrical devices, not specially provided for, in said paragraph 353. However, this may be, the Senate did not adopt the recommendations of its committee. Whether this was the result of more mature consideration of the matter, or from other causes, is not apparent. However, it is not shown that the House had any such purpose. What may have been in the minds of the Senate Finance Committee, under such circumstances, certainly cannot be conclusive as to the legislative intent. There is nothing here, in our judgment, which clearly shows a legislative intent differing from that which results from a consideration of the language used by the Congress and which compels a departure from the ordinary rules of construction which we have hereinbefore suggested.

The stipulation contains a clause stating that the imported devices each have as an essential feature an electrical element or device. This will not justify a classification of the devices under the third division of said paragraph 353, in competition with said paragraph 368, the latter being a classification by use, and the former not.

In this view of the matter, we have concluded the goods were properly classified by the collector and that the judgment of the United States Customs Court should be, and it is hereby, *reversed.*